JUDGMENT: Judgment affirmed in part and reversed in part and cause remanded.
OPINION
This appeal is taken by defendant-appellant Julius Ward from the judgment convicting him of possession of heroin by the Court of Common Pleas of Marion County.
On August 21, 1998, at approximately 8:30 A.M., corrections officers at the Marion Correctional Institution received information that Joe Brooks and Julius Ward, both inmates at the prison, possessed heroin. After a search of their personal living space and the day room, a room where inmates can watch television or play cards, the officers located three packets of heroin and a syringe. Upon discovery of the drugs, a corrections officer obtained urine samples from both Ward and Brooks. The urine was properly stored and tested by separate testing facilities for the presence of illicit drugs.
On December 10, 1998 Julius Ward was indicted on one count of possession of heroin, a felony in the fifth degree. Ward entered a plea of not guilty at his arraignment on December 14, 1998. After a trial by jury, Ward was found guilty on May 14, 1999. Immediately following the jury's verdict, the trial court sentenced Ward to eleven (11) months in prison to be served consecutive to his existing sentence. On appeal from that conviction Ward makes several assignments of error.
 1. The trial court erred to the prejudice of Appellant by denying Appellant's Motion to suppress evidence.
Initially Ward asserts that the trial court erred by failing to grant his motion to suppress evidence that he claims was obtained in violation of his Fifth Amendment right against self-incrimination. It is well settled that "[I]n a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. * * * Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Vance (1994),98 Ohio App.3d 56, 58, 647 N.E.2d 851, 852 quoting State v.Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143.
Ward filed a motion to suppress his uncounseled, self-incriminating statement allegedly unconstitutionally obtained by police interrogation after he had requested the assistance of counsel.
The Fifth Amendment to the United States Constitution provides that an individual shall not "be compelled in any criminal case to be a witness against himself". In Miranda v.Arizona, the Court determined that the Fifth andFourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the accused the he has the right to remain silent and also the right to have an attorney present. Miranda v. Arizona (1966)384 U.S. 436, 86 S.Ct. 1602. The court further established the procedures to be followed subsequent to the warnings. If the accused indicates that he wishes to remain silent, "the interrogation must cease." If he requests counsel, "the interrogation must cease until an attorney is present." Id. at 474, 86 S.Ct. at 1627; Statev. Williams (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323. An accused may only be subject to further interrogation by the authorities without the presence of counsel if he validly waives his prior request. Edwards v. Arizona (1981) 451 U.S. 477,101 S.Ct. 1880; State v. Williams, 6 Ohio St.3d 281, 452 N.E.2d 1323.
To determine whether the principles enunciated above have been violated the court has to make two distinct inquiries. "First, the courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on the finding that he (a) initiated further discussions with the police and (b) knowingly and intelligently waived the right he had invoked." State v. Rowe (1990), 68 Ohio App.3d 595, 589 N.E.2d 394 quoting Smith v. Illinois (1984),469 U.S. 91, 95, 105 S.Ct. 490, 492-93.
To determine whether or not an accused's conduct or statements constituted an assertion of the right to counsel the court must decide if the statement was unambiguous. Smith at 98,105 S.Ct. 494. The court specifically stated that "* * * where nothing about the request would render it ambiguous, all questioning must cease." Id. at 98, 105 S.Ct. 494. Moreover, the Court has held that invocation of the right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.Davis v. United States(1994), 512 U.S. 452, 459, 114 S.Ct. 2350,2355, 129 L.Ed.2d 362, 371; State v. Henness (1997), 79 Ohio St.3d 53,63, 679 N.E.2d 696.
In Davis, the Court concluded that the statement "Maybe I should talk to a lawyer" was not a clear and unambiguous request for an attorney. Thus, the interrogating officers were not required to terminate the questioning.
Since Davis, the following statements are among those which have been considered ambiguous and thus did not require police to terminate questioning: "I think I need a lawyer," Henness,79 Ohio St. 3d at 63, 679 N.E.2d at 696; "Maybe I want a lawyer, maybe I should talk to a lawyer," State v. Salinas (Dec. 8, 1997), Lake App. No. 96-L-146, unreported, 706 N.E.2d 381; "I think that I would like an attorney," State v. Taylor (Feb. 9, 1999), Medina App. No. 2783-M, unreported; "I think I might need to talk to a lawyer," State v. Hanson (Sept. 13, 1996), Montgomery App. No. 15405, unreported; "I plead the Fifth," State v. Peterson (Oct. 14, 1996), Madison App. No. CA96-02-010, unreported; "I feel like, talk to my, have my lawyer present," and "Well I mean, I'd like to have my lawyer here," State v. Stover (April 16, 1997), Lorain App. No. 69CA006461, unreported, "[D]o I have to hire an attorney to have him present * * *" and "maybe I need to have an attorney present," State v. Campbell (Nov. 6, 1997), Franklin App. No. 97APA04-462, unreported; "I'd rather have my attorney here if you're going to talk stuff like that * * *," State v. Mills (Nov. 24, 1997), Clermont App. No. CA96-11-098, unreported; and "Maybe I should get a lawyer," and "Do you think I should get a lawyer?"State v. Metz (April 21, 1998), Washington App. No. 96 CA 48, unreported.
The record discloses that the trial court overruled Ward's motion to suppress statements made during a custodial interrogation by Trooper Kevin Smith. We are bound to accept the trial court's findings of fact as true if they are supported by credible evidence. However, the trial court summarily overruled the motion to suppress without stating any findings of fact. Therefore, accepting as true the statements given at the motion hearing, we look to the record to determine whether or not the trial court applied the correct legal standard when denying appellant's motion to suppress.
The transcript of the suppression hearing reveals that Trooper Kevin Smith supplied Ward with a Constitutional Rights waiver form, a form that indicates all of his Miranda rights. After giving the form to Ward for signature, Trooper Smith read the rights contained therein aloud to Ward. He further testified that, after he expressly asked, Ward gave no indication that he did not understand the rights that were read to him. The following testimony of Trooper Smith describes the colloquy between Smith and Ward that occurred subsequent to the recitation of Miranda rights:
 Smith: He had questioned about an attorney, I think we —
 Q: What do you mean "questioned about an attorney"? As best you can recall, what do you mean?
 Smith: I don't recall what the actual statement was. At no point did he request an attorney or refuse to give a statement until he talked to an attorney.
Q: Did he say he wanted an attorney?
Smith: No, he did not say he wanted an attorney.
Q: Why are you so positive of that?
 Smith: Anytime — In my interviews, anytime a person who's basically shown and read a Miranda Form, if they basically state that they want an attorney or they don't want to give a statement until they talk to an attorney, we always terminate the interview.
 Q: Okay. What type of questions about an attorney do you consider would you consider within the realm of not requesting an attorney?
 Smith: Maybe along the question of "Do I need an attorney?"
 Q: So when you say "questioned about an attorney", you don't remember the exact question, but something along the lines of "Do I need an attorney?"
Smith: Right.
The following testimony contains Ward's version of the conversation:
 Q: Were you read a statement of rights form? I believe the Trooper testified that he read you your Constitutional Rights. Were you read that form?
Ward: No, I wasn't
 Q: Did he explain to you you had a right to have an attorney?
Ward: Yes, he did. He explained that right, yeah.
 Q: Did he explain you had a right to remain silent? Did he say that to you?
 Ward: No he didn't get that far because I requested a lawyer.
 Q: When you say you requested a lawyer, what did you say to him?
Ward: I requested to have a lawyer present.
Q: And what did he say to you at that point?
 Ward: Well, really didn't need one, because wasn't that serious.
The testimony outlined above discloses that Trooper Smith recalls the events of the interrogation differently than Appellant Ward. Trooper Smith testified that he did read Ward his Miranda rights from a standardized form supplied to all individuals subjected to custodial interrogation. Further, he testified that Ward, indeed, did make a statement about an attorney but that it merely consisted of the question, "Do I need an attorney?" and nothing more. Upon review of the cases cited above, the statement, "Do I need an attorney?", appears ambiguous on its face and does not establish an unequivocal request for an attorney. If Trooper Ward's testimony is believed, Appellant suffered no violation of his constitutional right.
However, Ward claims that he did, in fact, request an attorney. Further, he claims he was never read his Constitutional Rights from the standardized form. However, as stated above, conflicts in testimony and the credibility of witnesses are best judged by the trier of fact. As we have noted, the trier of fact, here the trial judge, must determine the credibility of witnesses who have given conflicting testimony, decide which version of the event is to be believed, and thus establish the truth of the matter. Clearly, the trial court believed the testimony of Trooper Smith and disbelieved the conflicting version of events given by Ward. The trooper's evidence supports the trial court's determination of no constitutional violation. As we are bound by the trial court's findings of fact, we perceive no error in its conclusion of law. Appellant's first assignment of error is overruled.
 2. The trial court erred to the prejudice of Appellant denying Appellant's motion to sever.
In this case Ward argues that the trial court committed prejudicial error by failing to grant his motion for a separate trial in violation of Crim.R. 14 which states:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
Criminal Rule 14 provides relief from joinder of offenses or defendants at trial. However, a defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden of affirmatively showing that his rights were prejudiced by joinder. State v. Torres (1981), 66 Ohio St.2d 340,421 N.E.2d 1288.
At trial Ward made a motion to sever the case from that of co-defendant Joe Brooks. Ward urged that the overlapping of evidence would prejudice him and result in guilt by association. On appeal he claims that the State agreed to omit certain parts of Trooper Smith's testimony but that it came in anyway when his co-defendant was performing cross-examination and that admission resulted in prejudice. Specifically he claims the following statement made by Trooper Smith was prejudicial:
"seventy-five percent of inmates were using drugs"
Ward claims that the above statement is prejudicial but he fails to tell this court how. Moreover, the Supreme Court of Ohio has held that "* * * the mere possibility that the defendant might have a better choice of trial tactics if the counts are separated * * * is insubstantial and speculative, it is not sufficient to show prejudice." Torres at 344, 421 N.E.2d 1291. As a result, this court cannot say that the joinder of defendants, Brooks and Ward, was prejudicial simply because the statement might not have come in had the defendants been tried separately. No error having been shown, Ward's second assignment of error is overruled.
 3. The verdict was against the manifest weight of the evidence.
In his third assignment of error Ward claims that the verdict was against the manifest weight of the evidence. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
A claim that the verdict was against the manifest weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id.
at paragraph three of the syllabus.
Possession of heroin is a violation of R.C. 2925.11(A), a felony in the fifth degree. R.C. 2925.11(A) provides:
 No person shall knowingly obtain, possess, or use a controlled substance.
The record reveals the following testimony offered by the State in favor of conviction on one count of possession of heroin:
Trooper Kevin Smith
Q: Did you interview Defendant Ward in this case?
A: Yes, I did.
Q: And what did he tell you?
 A: Basically he told me that there was some crazy things that were going on in the dormitory that night. * * *
 Q: * * * And did he indicate to you whether or not he specifically used heroin?
A: Yes, he did.
Q: What did he tell you?
 A: He told me that — between 6:30 and 7:00 p.m. the prior evening he had snorted a half a bag of heroin, and basically stayed up all night.
James L. Ferguson, Chief Toxicologist and Director of Forensic Toxicology
 A: We found 3 different opiates in the urine specimen of Julius Ward.
Q: And those would be?
A: Codeine, morphine, and monoacetyl morphine.
 Q: Okay. Explain to us what that would indicate to you?
 A: Codeine and morphine are the two classical drugs. * * * * Codeine and morphine could come from what are called licit, legal sources, but monoacetyl morphine is not a drug.
Q: What do you mean it's not a drug?
 A: It is not a legal drug. It is not manufactured as drug anywhere in the United States. It can only come from the breakdown of diacetyl morphine and diacetyl morphine is heroin. Heroin is a schedule 1 substance.
Julius Ward chose not to present any evidence and rested his case after the State presented its testimony. Despite this, Ward claims that as a whole the manifest weight of the evidence supported an acquittal not a conviction. Conflict between the testimony of different witnesses as shown above is resolved by determining which of the witnesses is to be believed. The assessment of credibility of witnesses is jury function. As a result, it must be remembered that at trial the jury heard all of the evidence, was instructed as to the law and found Ward guilty beyond a reasonable doubt.
The foregoing portions of the record, present credible testimony that if believed support a finding of defendant's guilt beyond a reasonable doubt and thus conviction, rather than acquittal. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown Ward's third assignment of error is overruled.
 4. The trial court erred to the prejudice of Appellant in failing to advise Appellant of his right to appeal, bad time, post release control, and his right to appeal.
Ward also asserts that the trial judge erred because he failed to advise the Defendant-Appellant of post release controls, bad time or other sanction as mandated by R.C. 2929.19(B)(3). R.C. 2929.13(B)(3) provides that if the sentencing court determines at the sentencing hearing that a prison term is necessary or required it must notify the offender that if he commits a criminal offense while serving the current sentence his current term may be extended. Moreover, Crim.R. 32(A) requires that after imposing sentence upon a defendant the court must advise him of his right to appeal. A review of the record in this case reveals that the trial court completely ignored the mandates of 2929.19(B)(3) and Crim.R. 32(A). Indeed, after imposing the eleven month sentence, the trial court failed to advise Ward of anything. Thus, we find that the trial court erred as a matter of law by failing to notify and advise Brooks in accordance with 2929.13(B)(3) and Crim.R.32. Therefore, appellant's fourth assignment of error is sustained to the extent the sentencing procedure was deficient as we have noted.
 5. The trial court erred to the prejudice of Appellant by incorrectly admitting physical evidence, thus denying Appellant's right to a fair trial.
Ward's next assertion is that State's exhibits 3A (a property control form), 3B (Chemist Tammy Bonner's notes), 4(Ward's urine samples), 4B (aliquots), 9 (Ward opiate confirmation), 10A (Transparency), 10B (Transparency) and 14 (Ward's MCI records) were not properly admitted into evidence because they were not identified. At the outset we observe that the trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104. Any error alleged in the admission of evidence must be shown by establishing that the trial court abused its discretion. State v. Sage (1987), 31 Ohio St.3d 173, 31 OBR 375,510 N.E.2d 343. The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 148.
The requirements for identification and authentication of evidence are contained in the Ohio Rules of Evidence. Rule 901 states:
 (A) * * * The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Evidence Rule 901(B) provides examples of how authentication or identification may be performed. The list is not exhaustive. Some examples include:
 (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.
 (4) Distinctive Characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
 (9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.
The record reveals that Tammy Bonner, a criminalist for the Ohio State Patrol Crime Lab, testified that exhibits 3A and 3B were her notes taken with regard to this case and the property control form that she filled out. With regard to exhibits 4 and 4A, Randy Shears, the mandatory drug coordinator who performed the urine tests, testified that exhibit 4 was indeed the urine sample obtained from Julius Ward. James Ferguson, the Chief Toxicologist and Director of Forensic Toxicology for the Franklin County Coroner's office, performed one of the laboratory tests on the urine sample. During his testimony he identified exhibit 4A as an aliquot or sample of the urine obtained from Ward and matched it to the corresponding name label. Finally, exhibit 14 was identified as Department of Rehabilitation and Corrections Report on Inmate Julius Ward by Trooper Kevin Smith an Investigator for the Marion Correctional Institution and one familiar with the records kept there. Exhibits 10A and 10B were merely transparencies offered as demonstrative exhibits of evidence already properly admitted and were thus properly identified.
In summary, all of the pieces of evidence that Ward has claimed were admitted in error have been shown to have been properly admitted. As a result, no error having been shown Ward's fifth assignment of error is overruled.
 6. The combination of aforementioned errors are sufficient to call into question the validity of the verdict, preventing the appellant from obtaining the fair trial guaranteed by the Fifth and Sixth amendments to the U.S. Constitution as made applicable to the states by the Fourteenth Amendment, and Article One, Sections 10 and Sixteen of the Ohio Constitution, requiring reversal of Appellant's conviction and a new trial.
In his final assignment of error, Ward claims that the cumulative effect of errors outlined above are prejudicial enough to call the verdict of the trial court into question. Since this court has considered and overruled every assignment of error alleged by Ward at trial and found only error in the sentencing after trial we will not revisit each assignment of error previously overruled. No error having been shown above at trial there can be no cumulative error. As a result, Ward's final assignment of error is overruled.
This judgment of the Court of Common Pleas of Marion County is reversed to the extent the sentencing procedure was deficient as we have noted, and this cause is remanded to that Court for further sentencing proceedings not inconsistent with this opinion.
Judgment affirmed in part and reversed in part and cause remanded.
SHAW and HADLEY, JJ., concur.